# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EARL PAYNE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. CIV-13-650-R |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Earl Payne brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f.[1]  United States District Judge David L. Russell has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure.  The Commissioner has answered and filed the administrative record (Doc. No. 9, hereinafter "R._").  The parties have briefed their positions, and the case is now ready for decision. For the reasons discussed below, it is recommended that the Commissioner's decision be AFFIRMED.

---

[1] Plaintiff's Brief (Doc. No. 11) refers only to the DIB application, while the Complaint (Doc. No. 1) alleges error in the denial of both the DIB and SSI applications.  As a precaution, the undersigned has considered Plaintiff's appellate arguments, and reviewed the propriety of the ALJ's denial, with respect to both the DIB and SSI applications.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his applications for DIB and SSI on February 16, 2006, alleging a disability onset date of March 20, 2005, and seeking benefits on the basis of: spider bite infection/staph infection in left leg and alcohol/drug abuse. R. 168-73, 185-90, 211, 216. Following denial of his applications initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 8, 2008. R. 61-64, 68, 100-01. The ALJ issued an unfavorable decision on January 23, 2009. R. 68-75. Plaintiff sought and was granted review by the Appeals Council. R. 76-79. The Appeals Council remanded the decision for further findings, instructing the ALJ to resolve issues regarding the identity of Plaintiff's attorney representative, correctly determine Plaintiff's past relevant work, and reconsider certain findings with the assistance of testimony from a vocational expert. R. 77-78.

Although the case was assigned to the same ALJ on remand, a different ALJ conducted the hearing on January 10, 2012. R. 40. Plaintiff waived his right to appear, but his attorney representative appeared, and a vocational expert appeared and testified. R. 161, 38-60. On February 8, 2012, the ALJ who conducted the second hearing issued a decision denying Plaintiff's DIB and SSI applications. *See* R. 22-31, 40.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged disability onset date through the date of the decision. R. 24; *see* 20 C.F.R. §§ 404.1571, 416.971. At

step two, the ALJ determined that Plaintiff had the following severe impairments: October 2010 episode of left hip cam femoral/acetabula impingement requiring March 2011 surgical dislocation and debridement; April 2005 episode of MRSA osteomyelitis in the left thigh/hip requiring abscess resection; a prior history of right shoulder rotor cuff injury/osteoarthritis requiring surgical corrections; chronic back pain secondary to degenerative disc disease of the lumbar spinal region; generalized anxiety disorder; recurrent major depressive disorder; pain disorder secondary to generalized medical condition; substance addiction; and alcohol dependence. R. 25; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ also determined that Plaintiff's alleged seizure disorder was not a medically determinable impairment. R. 24. At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 25-26; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 26-29; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ found that Plaintiff had the RFC to perform light work, subject to additional exertional and nonexertional specifications:

> [T]he claimant has the [RFC] to perform light work . . . except that requiring lifting 10 pounds occasionally and less than 10 pounds frequently; standing more than 2 hours in an 8 hour work day; sitting more than about 6 hours in an 8 hour work day; climbing, balancing, stooping, kneeling, crouching, and crawling more than occasionally; and understanding and performing more than simple and some complex job instructions and tasks. He also can make adaption to work situations.

R. 26; *see* 20 C.F.R. § 404.1567(b) (defining "light work"); *id.* § 416.967(b) (same). The ALJ determined at step four that Plaintiff was unable to perform any of his past relevant work (including as a sales clerk and boat operator) as the demands of that work exceeded Plaintiff's RFC. R. 29-30; *see* 20 C.F.R. §§ 404.1565, 416.965.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. R. 30-31. Taking into consideration the VE's testimony regarding the degree of erosion to Plaintiff's occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform semi-skilled or unskilled sedentary occupations such as telephone solicitor, microfilm document preparer, and charge account clerk, all of which offer jobs that exist in significant numbers in the national economy. R. 31; *see* 20 C.F.R. §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). On that basis, the ALJ held that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from March 20, 2005, through the date of the decision. R. 31; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Plaintiff's request for review of this decision by the Appeals Council was denied on April 24, 2013. R. 1-7. Thus, the February 8, 2012, determination of the ALJ is the Commissioner's final decision on Plaintiff's DIB and SSI applications. *See* 20 C.F.R. §§ 404.981, 416.1481. Thereafter, Plaintiff commenced this appeal.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole

and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

Plaintiff raises four contentions of error on appeal. First, Plaintiff argues that the ALJ failed to properly consider and to give proper weight to the opinions of the state-level consultative physicians and of Dr. Harvey Jenkins. Plaintiff relatedly argues that the ALJ failed to fulfill his duty to develop the record with respect to obtaining medical evidence from Dr. Jenkins. Pl.'s Br. (Doc. No. 11) at 4-9. Plaintiff additionally argues that the ALJ failed to properly assess Plaintiff's complaints of pain and that the ALJ did not properly analyze those impairments that were found to be "severe" at step two. Pl.'s

5

Br. at 10-12.

## I. Whether the ALJ Properly Considered Opinions of Certain Physicians or Failed to Properly Develop the Record

*A. The State-Level Consultative Physicians' Opinions*

In outlining his RFC assessment, the ALJ gave "great" or "considerable" weight to the opinions of state agency consultative physicians, all of which were issued between June and August of 2006. R. 26, 28, 29, 412-54. *See generally* 20 C.F.R. §§ 404.1502, .1519-.1519t, .1527; *id.* §§ 416.902, .919-.919t, .927. "A consultative examination is a physical or mental examination or test" that is purchased for a claimant at the SSA's request and expense from either a treating source or another medical source. 20 C.F.R. §§ 404.1519, 416.919. Here, there were five such examinations or tests: (1) an Internist Examination by examining physician John Cherry, M.D., with focus on range of motion of Plaintiff's joints, spine, hands, and wrists as well as a full physical assessment (R. 412-20); (2) a Mental Status Examination by examining physician Robert Danaher, Psy.D., accompanied by a capability opinion as to Plaintiff's ability to manage benefit payments in his own interest (R. 421-28); (3) a Psychiatric Review Technique and (4) a Mental RFC by nonexamining physician Carolyn Goodrich, Ph.D. (R. 429-46); and (5) a Physical RFC by nonexamining physician Luther Woodcock, M.D. (R. 447-54).

Plaintiff asserts that the ALJ erred in giving great and considerable weight to these medical examinations and tests because they were issued six years prior to the most recent ALJ determination. Pl.'s Br. at 4. Plaintiff, however, does not note disagreement with any particular finding or conclusion in these consultative physicians' opinions;

6

rather, Plaintiff sole basis for objection as to the substance of these opinions is that their age renders them "stale." Pl.'s Br. at 4-5. As support for reversal on this basis, Plaintiff cites the unpublished Tenth Circuit opinion *Stephens v. Apfel*, No. 97-6090, 1998 WL 42524 (10th Cir. Feb. 4, 1998). In *Stephens*, the ALJ ignored the findings of a 1993 mental evaluation reflecting a significant deterioration in the claimant's psychological condition since a 1989 consultative examination. *See id.* at *2. The appellate court's finding of error was not based only upon the age of the older record relied upon by the ALJ, but also, among other things, that: (1) the 1993 evaluation was issued by a treating physician rather than a consultative examiner; (2) the 1993 evaluation concluded there had been a "worsening" in the claimant's condition, which logically could not be reflected in the 1989 examination; and (3) the 1989 examination contained no specific findings that could be compared with the 1993 evaluation. *See id.*

The instant matter is distinguishable from *Stephens* in all material respects. Here, as in *Stephens*, the earlier opinions are those of consultative physicians, but in this case the ALJ properly found that the only more recent opinion cited by Plaintiff (a 2012 physical RFC by Dr. Jenkins) was issued by a nontreating physician, as outlined below in Part I(B). A nontreating source's opinion evidence is not entitled to the same presumptively controlling weight as was the treating physician's assessment in *Stephens*. *See Doyal*, 331 F.3d at 764; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Next, there is no contention by Plaintiff, or statement by Dr. Jenkins in his opinion (R. 613-17), reflecting that this 2012 opinion was premised upon a *worsening* of Plaintiff's condition since 2006. In fact, Dr. Jenkins stated that Plaintiff "is doing better" following recent hip

surgery.  *See* R. 613.  Finally, the 2006 consulting physicians' examinations and tests contain multiple specific findings as to Plaintiff's mental and physical condition that could be compared with any later evaluation.  *See* R. 412-54.

Plaintiff additionally argues that the ALJ's assignment of considerable weight to the consultative physicians' opinions, standing alone, renders the disability determination unsupported by substantial evidence, suggesting that the ALJ entirely failed to consider any post-2006 opinions.  Pl.'s Br. at 4, 8.  This argument is misleading and does not have merit.  As a threshold matter, Plaintiff defeats his underlying premise by simultaneously contending that the ALJ erred in his assessment of Dr. Jenkins' opinion issued in 2012. *See* Part I(B), *infra*; R. 613-17.  Next, although Plaintiff refers generally to "340 more pages of medical" evidence that postdated the 2006 consultative physicians' assessments, Plaintiff does not cite a single opinion or record, other than that of Dr. Jenkins, that the ALJ failed to consider or that contradicted the consultative physicians' assessments.  Pl.'s Br. at 4; *see Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) (rejecting a lack-of-substantial-evidence argument where there was no evidence or testimony contradicting the ALJ's conclusion that claimant retained the capacity for light work).  Further, the ALJ cited and discussed in detail other items of post-2006 medical evidence, including evidence that was entered into the record following the Appeals Council's remand order of June 10, 2011.  R. 25, 28, 29; *see, e.g.*, R. 594.  The ALJ expressly discussed a significant quantity of evidence that postdated the consultative physicians' opinions and fully explained his choice to give the latter considerable weight.  The undersigned may not and will not reweigh this evidence on appeal. *See Bowman*, 511 F.3d at 1272.

Reversal is not warranted on this basis.

B. *The Physical RFC of Dr. Harvey Jenkins and Development of the Record*

Plaintiff relatedly contends that the ALJ erred in concluding that Dr. Harvey Jenkins did not qualify as Plaintiff's "treating physician," therefore giving Dr. Jenkins' opinion "minimal weight," and in not securing additional records from Dr. Jenkins. Pl.'s Br. at 5-9. In relevant part, the ALJ's discussion of Dr. Jenkins' 2012 physical RFC was as follows:

> In January 2012, a Ph.D. degreed individual reporting to have followed the [claimant since July 2010] with ongoing pain management treatments submitted a medical statement assessing the claimant as precluded from performing even a limited range of sedentary exertion. . . . . Although this individual reports that since July 2010 he has provided claimant with ongoing monthly pain management treatments, he has not submitted any ongoing treatment notes or other documentation of treatments detailing clinical observations and findings into the hearing record. The undersigned does not find this individual to qualify as treating source and his opinion entitled to controlling weight as defined by Regulations 20 CFR 404.1527(d) and 416.927(d).

R. 27-28 (citation omitted); *see* R. 613-17. The ALJ further stated that he "grant[ed] minimal weight to the January 2012 statement of the Ph. D. individual reportedly providing the claimant pain management treatments." R. 29.

Plaintiff first argues that the ALJ's assessment was erroneous because Dr. Jenkins is an M.D., not a Ph.D. Pl.'s Br. at 5-6. *But see* R. 613 (form sent to Dr. Jenkins addressed to "Harvey Jenkins, PHD"), 300 (Plaintiff identifying Dr. Jenkins as "PhD., M.D." on a medications list sent in by Plaintiff's attorney). Assuming for purposes of this analysis that Plaintiff is correct as to Dr. Jenkins' degree, Plaintiff alleges no specific error arising from this misnomer. Pl.'s Br. at 5-6. The ALJ's decision expressly states

9

that Dr. Jenkins fails to qualify as a treating source because of the undisputed lack of records supporting the existence of an ongoing treating relationship. By contrast, although the ALJ notes a lack of an established medical degree, the ALJ nowhere *relies* upon that fact as the basis for his decision. R. 27-28. Nor would the ALJ's alleged mistake necessarily have precluded the ALJ from finding that Dr. Jenkins was a "treating source." *See* 20 C.F.R. § 404.1502 (defining treating source to include psychologists— i.e., non-medical doctors), § 416.912 (same); *cf.* R. 300, 613 (reflecting that Dr. Jenkins may have prescribed Plaintiff medications).

More fundamentally, the record does fail to reflect that Dr. Jenkins was Plaintiff's "treating source," and, thus, the ALJ did not err in declining to give the 2012 physical RFC controlling weight. *See Doyal*, 331 F.3d at 764. A "treating source" includes a physician or psychologist who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship" with the claimant. 20 C.F.R. §§ 404.1502, .1527(c); *id.* §§ 416.902, .927(c). The January 2012 physical RFC stated that Plaintiff had been seen monthly by Dr. Jenkins for pain management since July 2010. R. 613. Other than this isolated statement, Plaintiff points to no medical evidence in the record—e.g., treatment notes or other records—to support a conclusion that there was an "ongoing treatment relationship" between Dr. Jenkins and Plaintiff.

Plaintiff argues that the ALJ failed in his duty to develop the administrative record by not independently obtaining additional medical records from Dr. Jenkins that would establish this requisite ongoing relationship. Pl.'s Br. at 6-8. The Tenth Circuit has discussed the balance that must be struck in a disability determination between a

claimant's burden to prove his claim and the Commissioner's burden to develop the record:

> In making a determination regarding disability, the ALJ "shall develop a complete medical history," which includes a "reasonable effort" to obtain records from the claimant's treating physician. 42 U.S.C. § 423(d)(5)(B). Regulations clarify this statutory duty. Specifically, 20 C.F.R. § 404.1512(d) states that "before we make a determination that you are not disabled, we will develop your complete medical history." That regulation also makes clear, however, that the social security claimant has an obligation to assist the ALJ in its duty:
>
>> (a) General. In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.
>>
>> . . . .
>>
>> (c) Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim.
>
> 20 C.F.R. § 404.1512(a), (c).
>
> Given this statute and regulation, we have explained that the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that an adequate record is developed during the disability hearing consistent with the issues raised. Thus, an ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing.

*Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (alterations, citations, and internal

quotation marks omitted). The *Maes* court further explained that when a claimant is represented by counsel, the ALJ may rely upon the claimant's counsel to structure the claimant's case and to identify any issue requiring further development. *See id.*

Here, Plaintiff was represented by an attorney throughout the administrative process (although there were substitutions), including at the relevant 2012 hearing (although Plaintiff declined to attend). R. 22, 38-60, 130-32, 161, 276-98. At the hearing, Plaintiff's counsel referred only to the single 2012 physical RFC of Dr. Jenkins and did not mention any further treatment notes or records. Nor did Plaintiff's counsel ask to submit any posthearing evidence to the ALJ, although Plaintiff's attorney did submit other correspondence. R. 41-49, 58-59, 276-98. And although Plaintiff's attorney submitted additional briefing and medical evidence to the Appeals Council, which was incorporated into the record, there was no communication by Plaintiff's attorney to the Appeals Council suggesting that the record was lacking in any manner relating to Dr. Jenkins' opinions. R. 5-6, 301-02, 618-794. To the contrary, Plaintiff's attorney argued to the Appeals Council that Dr. Jenkins' physical RFC, by itself, established a treating relationship and should have been given great or controlling weight, with no reference to the lack of or need for any additional evidence of ongoing treatment. R. 301-02.

The ALJ was entitled to rely on Plaintiff and his attorney representative to present Plaintiff's case and request—or forgo—assistance in obtaining evidence. *See Maes*, 522 F.3d at 1096-97; *Branum*, 385 F.3d at 1271-72. The ALJ was not required "to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *See Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (noting that the ALJ must

develop the record in a manner that is consistent with the material issues that are raised). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994).

Because the ALJ's rejection of Dr. Jenkins' opinion as that of a treating source is sufficiently explained and adequately supported by the record, and the ALJ did not fail to fully and fairly develop that record, reversal is not required on this basis. *See Doyal*, 331 F.3d at 764; *Maes* 522 F.3d at 1096-97; *Hawkins*, 113 F.3d at 1168; 20 C.F.R. §§ 404.1502, .1527(c); 20 C.F.R. §§ 416.902, .927(c).

## II. Whether the ALJ Erred in Assessing Plaintiff's Credibility

The assessment of a claimant's RFC generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about the symptom(s) and its functional effects." SSR 96-7p, 1996 WL 347186, at *1 (July 2, 1996). Plaintiff contends that the ALJ erred by failing to closely and affirmatively link his credibility findings regarding Plaintiff's allegations of "the intensity, persistence, and functionally limiting effects of the symptoms," specifically pain, associated with his medically determinable impairments to substantial evidence in the record. Pl.'s Br. at 9-11; SSR 96-7p, 1996 WL 374186, at *1. This argument implicates the framework for the proper analysis of a claimant's evidence of pain and other subjective symptoms first set forth in *Luna v. Bowen*, 834 F.2d 161, 163-66 (10th Cir. 1987), and more recently summarized in *Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010). *See also* R. 21-22.

The ALJ determined that Plaintiff's medically determinable impairments "could

13

reasonably be expected to cause *some* of the alleged symptoms. R. 29 (emphasis added). The ALJ specifically concluded, however, that Plaintiff's statements regarding "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the ALJ's RFC assessment. *See* R. 29. In the course of determining Plaintiff's RFC, the ALJ noted that despite some complaints of pain, Plaintiff's 2005 episode of MRSA osteomyelitis had not been shown to have recurred and that by October 2010 Plaintiff "exhibit[ed] good strength, coordination and stability of both his right and left lower extremities." R. 28. The ALJ also noted that Plaintiff complained of chronic hip/leg pain but "did not seek or require any additional surgical evaluations, physical therapy, or other rehabilitative treatments" and did not need assistive devices. R. 28.

The ALJ further stated that Plaintiff reported good results from his March 2011 hip surgery and had not sought or required medical treatment since December 2011. R. 28. Regarding Plaintiff's alleged back and shoulder pain, the decision notes that Plaintiff has not needed surgery, hospital admission, emergency room treatment, or physical therapy and that repeated examinations have shown "good strength, flexibility, and physiological functions." R. 28. Regarding Plaintiff's alleged mental impairments: "No treating physician has found the claimant's psychiatric disorder to be of such severity and intensity as to require referral for ongoing evaluation and treatment . . . ." R. 28-29.

With respect to Plaintiff's daily activities, the ALJ noted that Plaintiff "persistently exhibited normal mental status examinations." R. 29. "Despite his psychiatric disorders and addiction disorders, the claimant has retained the ability [to] independently take [care

14

of his personal] and daily needs, fully participate in his medical treatments and decisions, independently obtain and retain legal counsel and advice, and access public benefits and facilities." R. 29. The ALJ referred to having considered "additional evidence that is inconsistent with the claimant's subjective complaints of totally disabling health impairments and/or indicative of total lack of credibility." R. 29. The ALJ noted, "[C]laimant's complaints of chronic pain and other disabling symptoms appear to be strongly motivated by his desire to obtain narcotic pain medication and other substance for non-medical purposes." R. 29.

Viewed in the context of the entire decision, the ALJ's view toward the credibility of Plaintiff's subjective complaints is not purely conclusory and is sufficiently "linked to substantial evidence." *See Wilson*, 602 F.3d at 1144-45. Plaintiff does not allege that the ALJ misstated any of the above evidence, and the decision clearly demonstrates that ALJ considered the prescribed factors in assessing Plaintiff's credibility—e.g., "daily activities"; treatment received; and "location, duration, frequency, and intensity of the individual's pain or other symptoms." *See* R. 26-29; SSR 96-7p, 1996 WL 374186, at *3. A claimant's ability to engage in daily activities, favorable postoperative reports and lack of necessity for additional medical treatment, and contradictory statements all may support an adverse credibility assessment. *See Rabon v. Astrue*, 464 F. App'x 732, 735 (10th Cir. 2012); *Holcomb v. Astrue*, 389 F. App'x 757, 761 (10th Cir. 2010).

The Court should not "engage in an impermissible reweighing of the evidence" or "substitute [its] judgment for that of the Commissioner." *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Because the ALJ closely and affirmatively linked his

15

credibility findings to substantial evidence, reversal is not warranted on this point. *See* R. 26-29.

### III. Whether the ALJ Failed to Assess Plaintiff's Severe Impairments

Finally, Plaintiff argues that despite the ALJ having found Plaintiff to have multiple severe, medically determinable impairments, "the record is devoid of any analysis" of these impairments. Pl.'s Br. at 11-12. Plaintiff specifically contends that discussion of how his impairments related to shoulder injury/osteoarthritis, back pain, anxiety, depression, pain disorder, and substance/alcohol addiction is lacking and that this omission requires the Court to draw its own conclusions from the recitation of facts. Pl.'s Br. at 12.

Plaintiff is correct that, having found that Plaintiff was subject to "severe impairment(s)" that would "significantly limit[]" Plaintiff's ability to work, the ALJ was obligated to adequately address functional restrictions associated with those impairments *See* R. 25; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), (e), (g); *id.* §§ 416.920(a)(4)(ii), (c), (e), (g). The ALJ's decision, however, does adequately and specifically address the associated restrictions (and the lack thereof) as to each of Plaintiff's cited impairments. *See, e.g.*, R. 28 (discussing lack of need for treatment for back and shoulder pain), 29 (discussing in detail Plaintiff's capabilities despite psychiatric and addiction disorders). The fact that this discussion and the relevant conclusions appear in step four rather than step two is not unusual and is not determinative of their substance. Reversal is not warranted on this point.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge recommends that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by September 26, 2014. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 12th day of September, 2014.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE